# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**LUPE ANAYA,**

    **Plaintiff,**

**v.**

                                       **CIV No. 19-355 SCY/JHR**

**STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, a foreign profit
corporation,**

    **Defendant.**

## MEMORANDUM OPINION AND ORDER
## DENYING MOTION TO BIFURCATE AND STAY[1]

    Defendant State Farm Mutual Automobile Insurance Company seeks to bifurcate Plaintiff's contractual claims from his extra-contractual claims, for both purposes of discovery and trial. Doc. 25 (Motion to Bifurcate and Stay, filed November 26, 2019). Because tortfeasor liability is not an issue in this lawsuit and because discovery relevant to the two categories of claims overlap, the Court denies Defendant's motion to bifurcate discovery. Further, while the Court is receptive to Defendant's argument that trial should proceed in two phases, the Court prefers to address this issue after the parties complete discovery and the Court decides any dispositive motions the parties may file. *See* Doc. 27 at 8 ("If this Court declines to stay discovery, State Farm requests that it grant State Farm's Motion and bifurcate trial in this matter to allow a jury to hear the UIM value issues first, and then, if necessary, the same jury would

---

[1] Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b), the parties have consented to me serving as the presiding judge and entering final judgment. Doc. 4, 5, 6.

hear the extra-contractual claims."). As a result, the Court denies without prejudice Defendant's alternative request to bifurcate trial into two phases.

## BACKGROUND

Plaintiff Lupe Anaya alleges she was injured in a motor vehicle accident after Christa Ruiz made a left turn in front of her vehicle, causing the vehicles to collide. Doc. 1-1 ¶¶ 7-8. Plaintiff settled with Ms. Ruiz's liability insurance carrier for its policy limits and now seeks underinsured motorist ("UIM") coverage from her insured carrier, Defendant State Farm.

Plaintiff filed the instant lawsuit in state court on March 13, 2019, Doc. 1-1, and Defendant removed it to this Court on April 17, 2019, Doc. 1. In her Complaint, Plaintiff brings two types of claims: UIM claims (including Count I for underinsured motorist benefits, Count III for breach of contract, and Count IV for breach of covenant of good faith and fair dealing) and extra-contractual claims (including Count V for insurance bad faith, Count VI for violations of New Mexico insurance code, and Count VII for violations of New Mexico Unfair Practices Act).[2] In the current motion, Defendant requests that the Court bifurcate Plaintiff's UIM claims from her extra-contractual claims and stay the extra-contractual claims, including discovery, pending resolution of Plaintiff's UIM claims by the jury. Doc. 25 at 7.

## LEGAL STANDARD

Federal Rule of Civil Procedure 42(b) allows that, "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Bifurcation under Rule 42(b) is "appropriate 'if such interests favor separation of issues and the issues are clearly separable,'"

---

[2] Plaintiff also brought a claim for declaratory judgment (Count II), but has since dismissed it. Doc. 15.

*Ortiz v. Safeco Ins. Co. of Am.*, 207 F. Supp. 3d 1216, 1217-18 (D.N.M. Sept. 13, 2016) (quoting *Palace Exploration Co. v. Petroleum Dev. Co.*, 316 F.3d 1110, 1119 (10th Cir. 2003)), such as "when the resolution of one claim may eliminate the need to adjudicate one or more other claims." *Id.* at 1218 (citation omitted). However, bifurcation is "inappropriate when it will not appreciably shorten the trial or [a]ffect the evidence offered by the parties because claims are inextricably linked." *Buccheri v. GEICO Ins. Co.*, No. 17-CV-0490 LF/KK, 2017 WL 3575486, at *2 (D.N.M. Aug. 17, 2017) (quotation omitted). Further, bifurcation "is an abuse of discretion if it is unfair or prejudicial to a party." *Ortiz*, 207 F. Supp. 3d at 1218 (citing *Angelo v. Armstrong World Indus., Inc.*, 11 F.3d 957, 964 (10th Cir. 1993)).

The Court has broad and considerable discretion in deciding whether to sever issues for trial. *Buccheri*, 2017 WL 3575486, at *1 (citing *United States ex rel. Bahrani v. ConAgra, Inc.*, 624 F.3d 1275, 1283 (10th Cir. 2010)). To that end, "bifurcation is decided on a case-by-case basis and should not be regarded as routine." *Id.* at *2 (citing *Marshall v. Overhead Door Corp.*, 131 F.R.D. 94, 97-98 (E.D. Pa. 1990)). The burden is on the moving party to show bifurcation is needed "as a single trial normally lessens the expense and inconvenience of litigation." *Ortiz*, 207 F. Supp. 3d at 1217. The Court also has broad discretion in managing its docket, including staying portions of discovery. *Willis v. Government Employees Ins. Co.*, No. 13-280 KG/KK, 2015 WL 11181339, at *1 (D.N.M. June 17, 2015) (citing *Clinton v. Jones*, 520 U.S. 681, 706 (1997)).

## ANALYSIS

Defendant asserts that bifurcation and a stay is appropriate because "adjudication of Plaintiff's UIM damages claim is a necessary factual antecedent to any consideration of Plaintiff's extra-contractual claims." Doc. 25 at 3. Two New Mexico District Court cases

authored by the Honorable William Lynch support this position. *Aragon v. Allstate Ins. Co.*, 185 F. Supp. 3d 1281 (D.N.M. 2016); *Ortiz*, 207 F. Supp. 3d 1216. In *Aragon*, the plaintiff brought a claim against her insurer for UIM benefits, as well as extra-contractual claims for failure to settle. 185 F. Supp. 3d at 1282, 1287. Judge Lynch explained that to recover UIM benefits, a plaintiff must establish the tortfeasor's negligence by proving duty, breach of duty, causation, and damages that exceed the tortfeasor's liability limits. *Id.* (citing *State Farm Mut. Auto. Ins. Co. v. Safeco Ins. Co.*, 2013-NMSC-006, 298 P.3d 452, 456). The parties in that case disputed whether the plaintiff was entitled to UIM benefits because they disputed the extent and value of the plaintiff's injuries. *Id.* at 1283. Judge Lynch further explained that, in contrast to a claim for UIM proceeds, bad faith failure to pay requires a showing that the insurer's "reasons for denying payment . . . were frivolous or unfounded," and a claim under the Unfair Insurance Practices Act requires a showing that the insurer "failed to attempt in good faith to effectuate prompt, fair and equitable settlements of an insured's claim in which liability has become reasonably clear." *Id.* at 1288 (citing *Sloan v. State Farm Mut. Auto. Ins. Co.*, 2004-NMSC-004, 85 P.3d 230, 236, and NMSA § 59A-16-20(E)).

Judge Lynch held that a UIM carrier is not required to pay on the policy until the plaintiff proves she is legally entitled to collect UIM damages. *Id.* at 1286; *see also* NMSA § 66-5-301(A) ("No motor vehicle or automobile liability policy . . . shall be delivered or issued for delivery in New Mexico . . . unless coverage is provided . . . for the protection of persons insured thereunder who are *legally entitled* to recover damages from owners or operators of uninsured motor vehicles . . . for injury to or destruction of property resulting therefrom . . . ." (emphasis added)). In other words, Judge Lynch determined that a plaintiff has no extra-contractual claims for failure to pay until she first proves she is legally entitled to UIM coverage. To do this, she must

prove all the elements of a UIM claim including damages that exceed the tortfeasor's liability limits. Accordingly, Judge Lynch applied the reasoning from *Hovet v. Allstate Insurance Co.*, 2004-NMSC-010, 89 P.3d 69, to the first-party UIM claim before him to hold that an extra-contractual claim for failure to settle "may only be filed *after* the conclusion of the underlying negligence litigation, and *after* there has been a judicial determination of fault in favor of the [plaintiff] and against the insured." *Aragon*, 185 F. Supp. 3d at 1285 (quoting *Hovet*, 89 P.3d at 76) (emphasis in original). As such, "bifurcation (or dismissal) is mandatory because, under New Mexico law, resolution of the UIM claim is a condition precedent to [the plaintiff] bringing claims for bad faith [failure to pay]." *Id.* at 1286; *see also Ortiz*, 207 F. Supp. 3d at 1222 (opinion issued by Judge Lynch four months after *Aragon*, reaching the same conclusion on an uninsured motorist ("UM") claim).

Other cases in this District reach a different outcome when the plaintiff alleges more than just an extra-contractual claim for failure to pay. In *Willis*, the plaintiffs sought UIM benefits from their insurer through a breach of contract action they filed when the parties could not agree on the extent of the plaintiffs' damages. 2015 WL 11181339, at *2. The plaintiffs also alleged extra-contractual claims for failure to deliver the quality or quantity of services contracted for, failure to timely process the claim, and failure to act honestly. *Id.* at *1. The defendant insurer made a familiar argument, asserting that the "Plaintiffs must first establish that they are entitled to UIM benefits and damages under the insurance policy before any extra-contractual bad faith claims are ripe for adjudication." *Id.* at *2.

The *Willis* court, however, noted that "[a]n insurer in New Mexico can act in bad faith in its handling of a claim 'for reasons other than its refusal to pay' a claim in full." *Id.* at *3 (quoting *O'Neel v. USAA Ins. Co.*, 2002-NMCA-028, ¶ 7, 41 P.3d 356). Because the plaintiffs'

5

extra-contractual claims were based on more than failure to pay, the court held that those claims were not dependent on the resolution of the UIM damages claim, and so bifurcation was not warranted. *Id.*; *see also Martinez v. State Farm Mut. Auto. Ins. Co.*, No. 16-cv-1029 WJ/LF, CM/ECF Doc. 27 at 6 (D.N.M. March 27, 2017) (denying bifurcation and finding the reasoning in *Willis* to be very persuasive when the plaintiff brought more than bad faith failure to pay claims); *Shultzaberger v. State Farm Mut. Auto. Ins. Co.*, No. 17-cv-1028 KRS/CG, 2018 WL 456154, at *2 (D.N.M. Jan. 17, 2018) (granting bifurcation but holding that had the plaintiff "pleaded facts and otherwise developed his cause of action for unlawful trade practices & fraud act & insurance code [violations], a meritorious argument might be made that this court should go forward regardless of whether [plaintiff] prevails on his breach of the UIM provision"); *Prescott v. Bristol West Ins. Co.*, No. 18-756 KBM/JHR, 2019 WL 95929 (D.N.M. Jan. 3, 2019) ("Because Plaintiff alleges more than bad faith failure to pay, her extra-contractual claims are not dependent on the resolution of her UIM claim, and bifurcation is not mandatory."); *Buccheri*, 2017 WL 3575486, at *3 (same).

Acknowledging the means through which *Willis* and other cases distinguish *Aragon*, Plaintiff in her response argues that her extra-contractual claims are likewise based on more than failure to pay. Doc. 26 at 7 ("Plaintiff's extra-contractual claims in this case arise for reasons other than the alleged simple 'dispute over value.'"). She asserts, "State Farm clearly put its own interest above that of its insured, Lupe Anaya, in taking 100% reimbursement of what it had paid under her medical payments coverage, and then declaring her fully compensated by the $25,000 from the underinsured motorist's carrier." Doc. 26 at 4. Plaintiff also asserts that Defendant acted in bad faith by declaring Plaintiff "fully compensated" for her injuries, without providing additional information. *Id.* at 4-5. Rather than identifying a different avenue to bad faith

6

recovery, however, these assertions appear to be part of the same path Plaintiff has been on all along: Defendant committed bad faith in not valuing Plaintiff's UIM claim higher.

And, because only allegations contained in a Complaint can forge an alternative path to recovery, these assertions, which are not in Plaintiff's Complaint, provide Plaintiff no alternative path even if read as extra-contractual allegations based on conduct other than bad faith valuation. In her Complaint, Plaintiff only alleges insurance bad faith for failure to offer Plaintiff a reasonable amount of compensation, and unspecified violations of the New Mexico Insurance Code and New Mexico Unfair Practices Act. Doc. 1-1 ¶ 29 ("Defendant's failure to offer Plaintiff a reasonable amount to compensate for her underinsured losses constitutes a breach of the insurance contract and a breach of its fiduciary duty."); *id.* ¶ 33 ("Defendant engaged in unfair claims practices as defined and prohibited by NMSA § 59A-16-20."); *id.* ¶ 37 ("Defendant State Farm's conduct as described above amounts to unfair or deceptive trade practices which are prohibited by the New Mexico Unfair Practices Act, NMSA § 57-12-1 et seq."). Because Plaintiff pursues her bad faith claim through a singular path, the grounds by which the above courts have distinguished *Aragon* do not exist in the present case. Thus, on this issue, the present case appears to be closer to *Aragon* than *Willis*.

The Court therefore again turns to the primary issue *Aragon* raises: must a plaintiff establish her amount of damages before she is legally entitled to recovery UIM benefits? While Judge Lynch in *Aragon* and *Ortiz* answers this question in the affirmative, *Willis* answers it in the negative. In *Willis*, the court concluded that the parties were not disputing that the plaintiffs were entitled to UIM coverage above the liability limits; they were only disputing the amount of those damages. 2015 WL 11181339, at *2 ("[T]he Court concludes that there is no issue regarding the underlying liability of the underinsured motorist and the right to a UIM claim.

Rather, the contract claims arise solely from the allegation that GEICO undervalued Plaintiffs' damages."). The court therefore held that

> New Mexico statutory law on UM/UIM coverage simply requires the insured be legally entitled to recover damages and that the negligent driver be uninsured or underinsured. Neither New Mexico statutes nor caselaw require the establishment of the amount of damages before an insured can be considered legally entitled to recover damages at all. An insured, therefore can be legally entitled to recover damages even if the exact amount of the damages is not yet determined.

2015 WL 11181339, at *4; *see also Yazzie v. Gov't Emp. Ins. Co.*, Civ. No. 16-1085 KK/LF, CM/ECF Doc. 81 at 4-5 (D.N.M. Apr. 24, 2017) (citing *Willis* and holding that in a UM case, as opposed to a UIM case, a plaintiff need not show damages that exceed the liability limits because "even the most minimal damages will exceed the amount the plaintiff could collect from the uninsured tortfeasor's non-existent liability insurance").

Taking a position contrary to *Willis*, the *Ortiz* court later held that

> *Willis* mis-reads New Mexico law when it concluded that an insured need not establish the amount of damages caused by the [tortfeasor] before the insured can be considered legally entitled to recover UIM damage. Not only must the insured establish the amount of damages caused by the [tortfeasor] by legal means, those damages must exceed the tortfeasor's liability limits before the insured can recover UIM benefits from his insurer.

207 F. Supp. 3d at 1220; *see also Shultzaberger*, 2018 WL 456154, at *2 (holding that a bad faith failure to pay claim would be rendered moot if the plaintiff was unable to prove the elements of causation and damages for the alleged UIM violation).

The Court, however, need not resolve these conflicting cases to reach a conclusion on bifurcation of discovery in the present case.[3] This is because bifurcation is not mandatory even if

---

[3] The parties in *Willis*, while disagreeing about the precise amount of damages, appeared to agree that UIM coverage had been triggered and so the plaintiff would receive *some* amount of UIM coverage. 2015 WL 11181339, at *2. In contrast, the parties in the present case dispute whether Plaintiff is entitled to *any* UIM proceeds. The parties, however, did not address whether this distinction matters and the Court need not consider this question in resolving the present motion.

8

*Aragon* is correct that, under New Mexico law, Plaintiff's extra-contractual claims for failure to settle are dependent on her proving she is legally entitled to recover UIM benefits, including a showing of her exact damages in an amount that exceeds the tortfeasor's limits. Bifurcation is governed by Federal Rule of Civil Procedure 42, which means bifurcation is not necessarily mandatory in federal court even if it is determined to be mandatory under state court rules. *See Oulds v. Principal Mut. Life Ins. Co.*, 6 F.3d 1431, 1435 (10th Cir. 1993) (holding that the federal court is not bound by the bifurcation rules of the Oklahoma state court). "Bifurcation is not mandated simply because determination of the coverage issue would dispose of the remaining extra-contractual claims, particularly [] where all the claims appear to be sufficiently linked to proceed through discovery and trial together." *Martinez*, No. 16-CV-1029 WJ/LF, CM/ECF Doc. 27 at 7; *see also Yazzie*, Civ. No. 16-1085 KK/LF, CM/ECF Doc. 81 at 9.

Bifurcation of discovery in this case is thus discretionary. The Court concludes that simultaneously proceeding with all discovery in this case is more efficient than bifurcating discovery for a number of reasons. First, unlike many cases in which discovery is bifurcated, liability of the tortfeasor in this case is not at issue. As set forth above, the non-party tortfeasor acknowledged liability and paid Plaintiff all insurance available under her policy. Defendant makes no argument that the tortfeasor's liability is at issue. Thus, even though an insured in a first-party claim stands in the shoes of the tortfeasor (as Judge Lynch has noted), concerns that motivated the New Mexico Supreme Court's decision in *Hovet* do not exist in the present case. *See Hovet v. Allstate Ins. Co.*, 2004-NMSC-010, ¶ 25 (warning of "the potential confusion that awaits us if we were to allow lawsuits for unfair settlement practices to proceed simultaneously with the underlying negligence litigation"). Instead, Plaintiff's contractual claims relate to the amount of Plaintiff's damages and the extra-contractual claims relate to an overlapping question

9

of whether Defendant's assessment that those damages was frivolous or unfounded. In other words, there is no threshold issue of liability that, if resolved in Defendant's favor, would obviate the need for discovery on damages. The potential savings that could be wrought from discovery bifurcation are therefore minimal.

This is particularly true because discovery on Plaintiff's contractual claims will overlap with discovery on Plaintiff's extra-contractual claims. Relevant to both the amount of Defendant's damages (the central issue in Plaintiff's contractual claim) and whether Defendant's assessment of Plaintiff's damages constituted bad faith (the central issue in Defendants' extra-contractual claims) is evidence related to Plaintiff's injuries. As a result, this is not the type of case where discovery easily lends itself to bifurcation.

Rather than resulting in conservation of resources, if bifurcated, this overlap is likely to create disputes as to whether a particular discovery request or deposition question relates to the contractual claims or the stayed extra-contractual claims. Given that the two types of claims are divided by a vast area of gray rather than a bright line of red, such disputes will not be easy to resolve. And, more importantly, time spent resolving such disputes has little return on investment for either the parties or the Court.

Nor does allowing contractual and extra-contractual discovery to proceed simultaneously threaten to deprive Defendant of its day in court. Unlike the situation in *Burge v. Mid-Continent Casualty Co.*, which involved a default judgment, Defendant will have an opportunity to contest all allegations against it regardless of how discovery is conducted. *See* 1997-NMSC-009, ¶ 20, 933 P.2d 210, 216 (cited by Defendant in Doc. 25 at 4).

And, granting Defendant's request to bifurcate discovery would foreclose Defendant's alternative option of having one jury trial in which the contractual claims phase is separated from

10

the extra-contractual claims phase (should such a second phase be necessary). Instead, granting Defendant's request to bifurcate discovery would create a risk that the parties would engage in discovery on the contractual claims, have a jury trial on such contractual claims, then engage in discovery on the extra-contractual claims (during which many of the same witnesses would have to be re-deposed), and have yet another trial before another jury (in which many of the same witnesses would have to be called again and much of the same evidence would have to be re-presented). The potential waste of resources expended on such a path would far outweigh any potential savings that would be realized if Defendant prevailed in the first trial and additional discovery on the extra-contractual claims was thereby avoided. *See Hodges v. GEICO Ins.*, No. 17-cv-960 JCH/KRS, 2017 WL 5611873, at *2 (D.N.M. Nov. 20, 2017) ("The parties have not convinced the Court that there will be no overlap in evidence and testimony between Count I [UIM claim] and Counts II and III [extra-contractual claims for failure to settle] that compels bifurcation. There are similar factual underpinnings between the contract and extra-contractual claims – the amount of the damages sustained by Plaintiff in the accident.").

Further, the delay in resolution of this matter that would occur should discovery proceed in two phases and should two trials therefore necessarily be held months apart runs counter to the public's interest in a speedy resolution of cases as set forth in the Civil Justice Reform Act. *See* 28 U.S.C. § 471 (expressing the intent "to facilitate deliberate adjudication of civil cases on the merits, monitor discovery, improve litigation management, and ensure just, speedy, and inexpensive resolutions of civil disputes"). While it is true that conducting litigation in a piecemeal fashion creates the opportunity to conserve resources in any given case, the more likely and frequent result of this strategy is to delay resolution of cases, drive-up parties' expenses, and doubly inconvenience witnesses necessary to the presentation of evidence. If

savings of resources necessarily resulted from the bifurcation of an initial threshold issue from issues dependent on the outcome of the threshold issue, discovery and trial on punitive damages would also be divided into two phases. This does not happen, however, because, in the aggregate, such division would be grossly inefficient.

Defendant also argues that the UIM and extra-contractual claims should be bifurcated in order to avoid prejudice to Defendant. Doc. 25 at 6. To that point, it argues that "[t]he two issues are unrelated, and the jury's consideration of the testimony on Plaintiff's extra-contractual claims during the trial of her damages claims can only result in confusion or improperly, and unnecessarily, influence the jury's decision regarding whether Plaintiff is entitled to damages at all." Doc. 25 at 6. As set forth above, the Court disagrees that the two issues are unrelated.

Further, the Court is not foreclosing the possibility that trial in this matter proceed before one jury in two phases (the second phase being necessary only if Plaintiff prevails in the first phase). As a trial date approaches, the Court intends to hold a status conference in which it will address whether the issue of a phased trial should be re-opened. Such a procedure would address concerns such as whether evidence of Defendant's offers of settlement would unfairly affect a jury's assessment of Plaintiff's damages.

Finally, Defendant argues that simultaneously proceeding with contractual and extra-contractual discovery will create an undue burden because some document that would be privileged in the contractual case might be discoverable in the extra-contractual case. Doc. 25 at 5-6. Such privilege issues, however, can be addressed through protective orders. *Yazzie*, Civ. No. 16-1085 KK/LF, CM/ECF Doc. 81 at 9; *Prescott*, 2019 WL 95929, at *4; *Buccheri*, 2017 WL 3575486, at *4.

For these reasons, the Court declines to bifurcate discovery related to Plaintiff's UIM claims from discovery related to her extra-contractual claims. Therefore, the Court also declines to stay discovery on the extra-contractual claims. The Court also denies as premature Defendant's request to bifurcate trial of this matter. Once the Court sets a date for trial, it will hold a status conference to address whether this issue should be re-opened. Accordingly, Defendant's Motion to Bifurcate and Stay (Doc. 25) is DENIED.

_____
Steven C. Yarbrough
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent